IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC ATKINSON, #325-324,          *
        Plaintiff,

                                *

     v.                      CIVIL ACTION NO.  PJM-09-038

                                *

MARY ANN SAAR,  et al.,
        Defendants.            *
                           ******

## **MEMORANDUM OPINION**

Defendants have moved for dismissal or summary judgment against Plaintiff Eric Atkinson. Paper No. 13.  Plaintiff has not filed a response.[1]   No hearing is necessary to resolve the issues before the Court.  *See* Local Rule 105.6 (D. Md. 2008).  For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

### **Standard of Review**

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

> Not every factual dispute will defeat the motion.  As the Supreme Court has stated, [b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

---

[1]Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on June 24, 2009, Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result  in the dismissal of this action.  Paper No. 14.  Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of the case or in the entry of summary judgment without further notice of the Court.  *Id.*

> properly supported motion for summary judgment; the requirement is that
> there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc*., 840 F.2d 236, 240 (4th Cir. 1988). The Court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1993), but it must also abide by its affirmative obligation to ensure that factually unsupported claims and defenses to not proceed to trial. *See Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986)). With this standard in mind, the Court now examines Plaintiff's claims.

**Background**

Plaintiff states that in 2005, he was convicted and sentenced to life in prison plus 70 years consecutive. He was initially housed at the Maryland House of Correction ("MHC") in Jessup, Maryland. Plaintiff states that during his first week at MHC he met with his Case Manager Emmer who informed him that he had two persons flagged as known enemies. The identity of the enemies was not revealed to Plaintiff. In February of 2007, Plaintiff was moved to Jessup Correctional Institution ("JCI"). Four days after his arrival he was attacked by two inmates. Plaintiff alleges that one of the attackers was a known enemy listed on his enemy alert list. Plaintiff states he was stabbed 26 times, which resulted in his being transported to Shock Trauma at the University of Maryland Medical System, where he underwent multiple surgeries. Paper No. 1.

The undisputed verified record reveals that on January 18, 2006, at MHC, Case Manager

Emmer met with Plaintiff for a security reclassification review.  Emmer advised Plaintiff that two enemies were listed on his enemy alerts.  The names of the enemies were not revealed to Plaintiff as the other inmates had listed Plaintiff as an enemy.  Plaintiff did not listed any known enemies.  The two enemies listed on Plaintiff's enemy alert form were Anthony Gill and Joseph Baker.  Neither of these inmates were then incarcerated at MHC.  Paper No. 13.

On July 26, 2006, Plaintiff was transferred from MHC to the Maryland Reception Diagnostic and Classification Center (MRDCC) and subsequently to JCI.  At the time of his transfers the only enemies listed on his OBSCIS enemies list were Anthony Gill and Joseph Baker.  Plaintiff did not inform Emmer, or any other correctional employee, that his brother Damon Atkinson, or inmate Damon Frye were his enemies.  *Id*.

In February, 2007, Plaintiff was attacked in the dining area by his brother and Damon Frye.[2] Plaintiff was stabbed multiple times resulting in his hospitalization at Shock Trauma, numerous surgeries and a lengthy convalescence.  *Id* and Paper No. 1.

## Analysis

Plaintiff complains that his right to be free from cruel and unusual punishment has been violated due to prison officials' failure to protect him from assault by other prisoners. The Eighth Amendment does recognize this right.  *See Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).  As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994),

> Prison officials have a duty . . .  to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the

---

[2] Investigation of the assault revealed that Damon Atkinson had implicated Plaintiff in the crime for which Plaintiff is incarcerated.  Investigators opined that Damon Atkinson attacked Plaintiff preemptively to stave off Plaintiff's attacking him.  No theory was offered as to Damon Frye's involvement in the assault.  Paper No. 13.

3

> government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In a failure to protect claim, a prisoner must show first that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference.  *Id.* at 834.

The undisputed records before the Court reveal that Plaintiff was transported to the University of Maryland Shock Trauma Center where he underwent emergency surgery and was hospitalized at the University of Maryland for two weeks, and then spent two months in the Division of Correction Hospital.  Paper No. 1.  The Court finds Plaintiff has satisfied the first prong of the *Farmer* test.  The second element, however, is more problematic.

Deliberate indifference in the context of a failure to protect claim means that Defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy.  *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact  that prison officials were therefore deliberately indifferent to his safety.").

In the instant case there is simply no evidence that any Defendant knew that Plaintiff and his brother were at odds.  Even after the assault, Plaintiff advised investigators that he did not know why his brother would assault him.  Plaintiff did not advise any correctional employees that he feared his

brother or the other assailant, Frye.  Moreover, Plaintiff is mistaken in his belief that his brother was listed on his enemy alert.  The evidence before the Court reveals that neither of the inmates listed on the OBSCIS enemy alert were Plaintiff's attackers.  Paper No. 13.   When alerted to the attack correctional employees responded quickly to stop it, employing pepper.  *Id*.  As noted, a prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and disregards it. *Farmer***,** 511 U.S. at 837-39.  There is simply no evidence before the Court that Defendants were deliberately indifferent to Plaintiff's safety.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor.  Plaintiff has failed to submit evidence to support his claim, or to put the material fact of this case--the failure to protect--in dispute.  *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991).  Accordingly, Defendants' unopposed Motion for Summary Judgment shall be granted.

A separate order follows.

_____/s/_____
PETER J. MESSITTE
August 27, 2009                                  UNITED STATES DISTRICT JUDGE